CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, Plaintiff,

v.

UNITED STATES of America, Harold Brown, Secretary of Defense, W. Graham Claytor, Secretary of the Navy, Jack L. Bowers, Assistant Secretary of the Navy, Raymond W. Burk, Individually and as Deputy Commander for Industrial and Facility Management, Department of the Navy, Wilbur N. Ginn, Individually and as Director, Facilities and Equipment Division of the Department of the Navy, P. D. Kjeldgaard, Supervisor of Shipbuilding, Conversion and Repairs of the Department of the Navy, Harold F. Turnbull, Individually and as a former employee of the Department of the Navy and a present employee of Triple A Machine Shop, Inc., Harry Jacobs, George N. Buxton, and Allan Friedson, employees of the Department of the Navy, Triple A Machine Shop, Inc., a California Corporation, Albert E. Engel, Individually and as President of Triple A Machine Shop, Inc., Clifford P. LeGette, Individually and as General Manager, Triple A Machine Shop, Inc., Coldwell Banker Co., a California Corporation, Defendants.

No. C–77–546–SW.

United States District Court, N. D. California.

Nov. 25, 1977.

James L. Browning, Jr., U. S. Atty., David P. Bancroft, Asst. U. S. Atty., San Francisco, Cal., for federal defendants.

Thomas M. O'Connor, City Atty., Philip S. Ward, Deputy City Atty., San Francisco, Cal., for plaintiff.

George M. Coburn, Vom Baur, Coburn, Simmons & Turtle, Washington, D. C., for defendants Triple A Engel and LeGette.

Edward Briggs, Associate Gen. Counsel, Coldwell Banker & Co., San Francisco, Cal., for defendant Coldwell Banker Co.

## MEMORANDUM AND ORDER

SPENCER WILLIAMS, District Judge.

Hunter's Point Naval Shipyard consists of approximately nine hundred sixty five (965) acres of land within the boundaries of the City and County of San Francisco. It was previously used by the Navy as a ship repair and conversion facility. In April 1973 the Secretary of Defense announced closure of the shipyard and declared it to be a surplus federal facility. However, in response to protests by the plaintiff in this action,[1] a determination was subsequently made that the facility would be leased rather than sold as excess federal property.

The Department of the Navy issued a Request for Proposals in December 1975 for leasing of the majority of the existing shipyard property. Plaintiff submitted its response to the Request in March 1976 which essentially included a proposal to develop the shipyard as a major deep water port facility and the subleasing of other areas for ship repair and other industrial uses. Defendant Triple A Machine Shop, Inc.'s initial proposal contemplated primary use of the property as a ship repair facility. It did, however, include a proposal for subleasing a portion of the property to the Port of San Francisco for $1.00 per year.

After considering the proposals initially submitted, the Navy narrowed the number of viable bidders to two—plaintiff and defendant Triple A. In May 1976, a five year renewable lease was awarded to Triple A.

Plaintiff claims that between the time of the lease award announcement and execution of the lease in June 1976, it agreed with Triple A to sublease a portion of the shipyard to be utilized as a port facility. Rent for this sublease was allegedly set at $1.00 per year. This sublease arrangement was not incorporated into the lease entered into by Triple A and the Navy, nor, allegedly, was the City allowed to participate in the discussions of the final lease terms. The City and County now contends that Triple A has reneged on its agreement and is trying to sublease portions of the property to plaintiff as well as others for two to four million dollars annual rent.[2]

The City and County of San Francisco is interested in either leasing or subleasing Hunter's Point Naval Shipyard because of its potential for port development. The Shipyard is apparently served by a natural deep water ship channel which minimizes the amount of dredging necessary to fully develop a port facility. Improvements made by the Navy while utilizing the facility, including ship berths, drydocks and industrial and commercial buildings, enhance its desirability for use as a port site. Plaintiff asserts that Hunter's Point is the only geographic location within its boundaries that presents a financially feasible opportunity to expand the Port of San Francisco. In the opinion of the City and County, the

---

1. On October 11, 1973, Mayor Joseph Alioto sent a letter to Secretary of Defense Schlesinger urging that the property not be sold and that leases be negotiated for use of this property as a shipbuilding and repair facility.

2. The $2–4 million dollar figure is somewhat deceptive. Allegedly, Triple A is trying to lease only 83 of the original 376 acres it agreed to sublease to plaintiff for $890,000 per year.

Navy ignored these concerns when it awarded the lease to Triple A and when it failed to insure that the plaintiff would be given the sublease for port purposes after such award. This failure is claimed to violate the public interest thereby justifying the relief plaintiff seeks herein.

The complaint sets forth eight separate claims. The first and seventh causes of action basically allege that the award of the lease to Triple A rather than to the plaintiff is contrary to the public interest. The second, third and fifth causes of action allege various improprieties in the leasing process. The sixth and eighth claims challenge the lease award on the grounds of noncompliance with NEPA and the Coastal Zone Management Act respectively. The fourth cause of action states a Freedom of Information Act claim.

Plaintiff seeks a judicial declaration that Triple A's lease is void and should be set aside as well as an affirmative injunction ordering the Navy to readminister the lease process. Injunctive relief prohibiting Triple A and its real estate agent, defendant Coldwell Banker, from subleasing of the facility is also sought. Finally, five hundred million dollars ($500,000,000) in damages is requested in each of the second, third and fifth causes of action, naming as defendants various individuals and, in the third cause of action, the United States.

Presently before this court are motions to dismiss made by all defendants. The federal defendants have simultaneously moved for summary judgment.

*Statutory Basis for Leasing Hunter's Point*

The leasing of non-excess military property is governed by 10 U.S.C. § 2667. In relevant part, that statute provides:

(a) Whenever the Secretary of a military department considers it advantageous to the United States, he may lease to such lessee and upon such terms as he considers will promote the national defense or be in the public interest, real or personal property that is—

(1) under the control of that department;

(2) not for the time needed for public use; and

(3) not excess property, as defined by section 472 of title 40.

The regulations adopted to implement the statute are contained in 32 C.F.R. § 736.5 (1975). These regulations do little more than repeat the statutory standard:

*Leases.* Real and personal property under the control of the Department of the Navy not excess to its needs and not for the time being required for public use may be leased, when the Secretary of the Navy shall deem it to be advantageous to the government, to such lessee or lessees and upon such terms and conditions as in his judgment will promote the national defense or be in the public interest. Such leases shall be for a period not exceeding five years unless the Secretary determines that longer period will promote the national defense or will be in the public interest. Such leases are authorized by the Act of August 10, 1956 (70A Stat. 150; 10 U.S.C. § 2667).

If the proposed lease provides for rent payments exceeding $50,000 per year or if the fair rental value of the property is over $50,000 annually, 10 U.S.C. § 2662 requires that a report concerning the lease be submitted to the Committees on Armed Services of the Senate and House of Representatives. While these committees need not act on the lease, a thirty day waiting period is required between submission of the report and execution of the lease. 10 U.S.C. § 2662(a)(2).

## I. REVIEW OF AGENCY ACTION

### A. *The "Committed to Agency Discretion" Exception*

The ability of this court to review the action of the Navy in leasing this property is premised on the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*[3]

3. The Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* does not provide independent subject matter jurisdiction to review agency action. *Califano v. Sanders,* 430 U.S. 99, 105–

which permits judicial review *except* to the extent that 1) the applicable statute precludes judicial review or 2) agency action is committed to agency discretion by law.

■ The general rule is that administrative action *is* subject to judicial review. *Barlow v. Collins*, 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Arizona Power Pooling Association v. Morton*, 527 F.2d 721, 727 (9th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). Exceptions to that rule are very narrow. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1975).

■ The first exception to reviewability applies if a specific exclusion appears on the face of the statute or there is clear and convincing evidence of Congressional intent to restrict judicial review. The statute pursuant to which this lease was entered into, 10 U.S.C. § 2667, does not meet this criteria.

■■ The second exception, "committed to agency discretion," is applicable only in those "rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1975). The fact that the statutory authority involves some degree of discretion is of no consequence since agency action under those conditions may be reviewed and set aside for abuse of discretion. 5 U.S.C. § 706(2)(A). Rather, the question under the second exception is whether the statute pursuant to which agency action was taken so completely commits action to agency discretion that review will be totally precluded.

In determining whether 10 U.S.C. § 2667 falls within the second exception, we must review both the language of the statute and

the legislative history to ascertain whether there has been such a complete commitment to agency discretion. *Strickland v. Morton*, 519 F.2d 467, 468 (9th Cir. 1975). The language of § 2667 itself contains no limitation on the Secretary's discretion.[4] Leasing of property is available when "the Secretary . . . considers it advantageous to the United States." The choice of lessee and the terms of the lease may be such as the Secretary determines "will promote the national defense or be in the public interest."

Plaintiff's complaint is that it, not Triple A, should have been awarded the lease or that the proposed lease should have included a sublease for plaintiff. There is virtually no limitation imposed upon the Secretary as to his choice of lessee or the terms of the lease. He is constrained only by the determination of the "public interest" and the "national defense." These provisions, like those of the statute before the court in *Strickland v. Morton*, "breathe discretion at every pore." 519 F.2d at 469.

■ The stated purpose of the statute is to "broaden and make uniform the authority of the War and Navy Departments to lease government property." S.Rep.No. 626, 80th Cong., 1st Sess. (1947), *reprinted in* U.S. Code Cong. Serv., p. 1592. The legislative history indicates that the purpose of the leasing provision is to enable property not immediately needed to be leased in such a manner that it will be utilized with as few changes as possible in order that the property could immediately be put back into operation in the event of an emergency. *Id.*[5]

Thus, if this court is to exercise the review urged upon it by plaintiff, it must substitute its judgment for that of the Secretary not only as to the proper choice of lessee, but also as to what is or is not in the national public interest and what will or

07, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). An independent jurisdictional basis must exist.

**4.** Congressional review under 10 U.S.C. § 2662(a)(2), (3) does, of course, provide a non-judicial mechanism for inhibiting unbridled exercise of such discretion. See discussion *infra*.

**5.** These purposes are also reflected in the letter to House Speaker Hon. Joseph W. Martin from the Navy Department dated April 28, 1947. U.S. Code Cong. Serv., 80th Cong., 1st Sess., p. 1594 (1947).

will not promote the national defense. The Secretary possesses much greater knowledge and technical expertise than does this court for determining such matters, and it is inconceivable that Congress intended that his judgment thereon be subjected to judicial interference.

Furthermore, the persons challeng'ng lease awards are not without recourse. An appeal is available through the GAO protest procedures,[6] and 10 U.S.C. § 2662(a)(2), which provides that a report must be submitted to the Armed Services Committees of Congress prior to lease execution, affords an avenue of political recourse to protest the decision. The legislative history of § 2662, S.Rep. 1338, 86th Cong., 2nd Sess. (1960), *reprinted in* U.S. Code Cong. & Admin.News, p. 2245, indicates that its purpose was to give Congress an effective review of these transactions. This is consistent with the power to control and dispose of federal property delegated to Congress in Article IV, Section 3, Clause 2 of the Constitution.

■ This court therefore finds that action taken pursuant to 10 U.S.C. § 2667(a) is committed to agency discretion and is nonreviewable under 5 U.S.C. § 701(a)(2). This finding, however, precludes review only where the issue presented is a challenge to the informed judgment of the Secretary in making his decision. Where the alleged abuse of discretion "involves violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions," review is still possible. *Ness Investment Corporation v. United States Department of Agriculture Forest Service*, 512 F.2d 706, 715 (9th Cir. 1975). Thus, it is necessary to examine each issue raised by the plaintiff to determine the availability of review question.

■ The first cause of action alleges no more than that the award to Triple A was not in the public interest. This squarely presents the issue of whether the Secretary's judgment was or was not correct.

The second and seventh causes of action appear to allege violations of applicable statutes and regulations. However, closer analysis shows such statutory and regulatory authority to be inapplicable to this leasing transaction. That being the case, the basic thrust of these two causes of action is to challenge nothing more than the Secretary's informed judgment as to what lessee and upon what terms the property should be leased.

■ The seventh cause of action alleges that pursuant to "applicable statutory provisions and regulations adopted in furtherance thereof" the defendants established four criteria[7] for evaluating bid proposals and then failed to apply them evenhandedly. Plaintiff asserts that this constitutes an abuse of discretion.

The applicable statutory provisions and regulations consist of 10 U.S.C. § 2667, 32 C.F.R. § 736.5 (1975) and SECNAVINST 11011.43 (Sept. 12, 1970). Specific guidelines pertaining to the conduct of lease negotiations do not exist in any of these statutes or regulations. The SECNAVINST instruction contains only very generalized procedures for the leasing of property.[8] Similarly, the Request for Proposals for the Hunter's Point lease contained no reference to specific rules to be followed in the conduct of lease negotiations.

---

**6.** A protest was lodged with the GAO by plaintiff on January 7, 1977, pursuant to 4 C.F.R. § 20.1 (1977). On June 3, 1977, this court ordered the GAO to proceed with the bid protest review.

**7.** (a) The amount of annual rent;
(b) The planned maintenance program and guaranteed minimum annual normal maintenance;
(c) Proposed utilization of the Facility, the resultant impact on the environment, and

efforts to retain the basic characteristics as a Shipyard;
(d) Anticipated employment to be generated resulting from the proposed leasing of the Facility.

**8.** This instruction requires that leases be advertised and proposals received for evaluation. In 7(B)(3) of the instruction a rather flexible conduct of negotiations with bidders is described. Set procedures for such negotiations are not set forth in the instruction.

■ In its briefs, the City and County contends that the federal defendants voluntarily adopted and then violated section III of 32 C.F.R., known as the Armed Services Procurement Regulations, and that such violation may be reviewed. However, those regulations apply only to the procurement of "supplies and services" by the Department of Defense. They do not apply to the negotiation of leases and were not formally adopted by the Navy to govern this lease. Thus, they are not binding upon the Navy in this instance.

Since no statutory or regulatory authority exists to guide the specific conduct of the negotiation of leases, the only basis upon which the seventh cause of action can exist is to state that the Secretary abused his discretion in the evaluation of various proposals against the criteria set forth in the request. This alleges nothing more than the first cause of action—that the informed judgment of the Secretary was not in the public interest. Again, this court may not review that claim.

■ The second cause of action alleges violations of 10 U.S.C. § 2667, 10 U.S.C. §§ 2202–2211 and the regulations adopted pursuant thereto. The asserted violation of 10 U.S.C. § 2667 states no more than the first cause of action. Sections 2202–2211 constitute the statutory scheme governing service, supply and procurement for the Department of Defense. They do not govern leases of property and are thus inapplicable to this transaction. Similarly, as noted above, the regulations, ASPR's, adopted pursuant to these statutes were not binding on the Secretary in this instance.

Absent such guidelines, the conduct of the negotiations is left to the discretion of the Navy. As the SECNAVINST 11011.-43(7)(B)(3)(b) [9] reflects, the nature of these leasing transactions requires a great deal of flexibility in the negotiation process. Sealed bids are not advised, and the instruction contemplates that the proposals will be substantially revised during negotiation. This flexibility in evaluating the proposals is part of the Secretary's discretion in making the public interest determination. The issue raised is thus one committed to agency discretion and is non-reviewable.

### B. Alternative Grounds for Review

■ The claims set forth in the fifth, sixth and eighth causes of action are based on statutory violations. As such, they are reviewable by this court if they state viable claims and if standing exists.

### 1. Conflict of interest

The fifth cause of action alleges breach of fiduciary duty by defendants Burk and Turnbull. Presumably, this portion of the complaint attempts to set forth a ground for review based on violations of the federal criminal conflict of interest statutes, 18 U.S.C. § 201 and § 208.

■ However, plaintiff lacks the requisite standing to assert this claim. Section 702 of the Administrative Procedure Act specifically provides that:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

Under the test established in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), plaintiff must establish that the challenged action caused him "injury in fact" and that the "interest sought to

---

9. SECNAVINST 11011.43 (7)(B)(3)(b) provides:

Because of the diverse character, and the varied command requirements with respect to the lease of industrial real property, it is generally not practicable to issue detailed specifications in advance and to call for sealed bids. In lieu thereof, competitive proposals will usually require further elaboration upon such matters as the extent of maintenance assumed, removal and storage of Navy machinery and equipment, amount of insurance, rental and other details which should be the subject of further negotiations before a lease can be made. In addition, and notwithstanding the terms of written proposals received, negotiations with interested parties frequently will result in bettering the terms contained in such proposals. In all cases, extreme care must be taken that the terms of any proposals received are held in strictest confidence.

be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute . . . in question." 397 U.S. at 152–53, 90 S.Ct. at 830.

■ Plaintiff does not fall within the zone of interests arguably protected by these criminal statutes. Their purpose is to protect the government from corruption and self-interested financial dealing. In interpreting the predecessor to these statutes, the Supreme Court indicated that their function "is to protect the public from the corrupting influences that might be brought to bear upon government agents who are financially interested in the business transactions which they are conducting on behalf of the government." *United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 563, 81 S.Ct. 294, 316, 5 L.Ed.2d 268 (1961). Furthermore, 18 U.S.C. § 218 provides for the voiding or rescission of any contract by the executive or agency head when an employee of the United States has been convicted under the conflict of interest statutes for conduct in relation to such contract. Thus, the disappointed bidder is not the appropriate party to challenge and seek to void any transaction allegedly in violation of the conflict of interest laws.

Nor does the requisite injury in fact exist. As a "member" of the general public, plaintiff does not have standing. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Even as a disappointed bidder, the City and County cannot show the necessary "nexus" between the "alleged injury and the claim sought to be adjudicated." *Linda R. S. v. Richard D.,* 410 U.S. 614, 618, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1972). It is only speculation that had the alleged conflict of interest not existed,

plaintiff would have been awarded the lease.

### 2. *Non-Compliance with NEPA*

In its sixth cause of action, plaintiff alleges a violation of the National Environmental Protection Act (NEPA), 42 U.S.C. § 4332(c), which requires that an environmental impact statement be prepared with regard to all "major federal actions significantly affecting the quality of the human environment."

More specifically, plaintiff contends that the "lease of the Shipyard to defendant Triple A . . . constituted major federal action . . ." and the defendants "were obligated to prepare an Environmental Impact Statement with respect to the Shipyard prior to the award of the lease."

■ Defendants' challenge plaintiff's standing to raise the alleged NEPA violation; assert that even if standing exists, plaintiff has failed to state a claim entitling it to relief; and also seek summary judgment on the basis that the Navy has in fact complied with NEPA.[10]

#### a. *Standing*

■ Plaintiff's standing to bring this NEPA claim hinges on its ability to show that the action has caused it "injury in fact" to an interest arguably within the "zone of interests" to be protected or regulated by NEPA. *Cady v. Morton,* 527 F.2d 786, 791 (9th Cir. 1975). The claimed injury is the alleged misuse of natural resources within its jurisdiction arising out of the lease award to Triple A rather than to itself. The "interest arguably within the zone of interests to be protected" concerns essentially the same matter—the misuse of

**10.** Defendants have also asked the court to dismiss the NEPA claim on the ground it raises an ecological smokescreen to cover what is actually an economic objective. It is true that City has not alleged that the Shipyard should not have been leased—only that it should not be leased to Triple A. And in its papers in opposition to defendants' motions (at p. 52) plaintiff candidly indicates a willingness to forget the NEPA claim if the court would order that ". . . the parties make, execute and enter into a valid sublease of the deepwater port facilities as previously committed to by the parties . . .." However, while defendants' contentions may be well-founded the court is not convinced that Congress has empowered it to investigate ulterior motivation in passing on the validity of a NEPA complaint.

natural resources. Standing therefore exists.[11]

### b. *Failure to State a Claim*

■ Although plaintiff has standing, more is required for plaintiff to pass muster under the failure to state a claim attack. The complaint asserts that the award of the lease to Triple A had the following environmental impacts: 1) the deep water marine terminal potential of the area was inadequately provided for by the proposed lease, 2) the highest and best use of the property as a port was not promoted, 3) the outlease created the possibility of damaging port expansion elsewhere in the San Francisco Bay, and 4) the lease conflicts with local land use policies approved by the United States to the detriment of the Bay environment.

The first two allegations, as a matter of law, are clearly insufficient to support a claim for a violation of NEPA. No environmental injury is alleged by a claim that a project does not include the plaintiff's proposed use of the land. The federal action in this case is the outlease of the Shipyard to Triple A for a use that resumes the former function of the property. The action taken here did not contemplate use of the property as a deep water terminal.

Plaintiff's third allegation is similarly insufficient as a matter of law. Assuming that the allegation that the government's failure to allow development of Hunter's Point as a deep water terminal creates the possibility of more environmentally hazardous development in other parts of the Bay is true, it does not state a NEPA claim. If it occurs, it will not be a product of this federal action. The decision to outlease the Shipyard to Triple A is not tantamount to port expansion elsewhere. If and when the City expands the Port of San Francisco the environmental consequences will have to be appropriately dealt with at that time.[12]

Finally, plaintiff's allegation that the lease to Triple A conflicts with local land use policies approved by the federal government to the detriment of the environment is deficient in that it fails to assert what, if any, environmental effects spring from such alleged conflict. *City of Davis v. Coleman,* 521 F.2d 661, 673 (9th Cir. 1975).

---

11. Standing of a city to sue under NEPA was recently recognized in *City of Davis v. Coleman,* 521 F.2d 661 (9th Cir. 1975) in which the city sued to invalidate an interstate highway interchange proposal three miles from the city on the ground that no EIS had been prepared. The court found that the danger that environmental impacts will not be considered was sufficient injury in fact to support that prong of the test:

> NEPA, as we recently observed, is essentially a procedural statute . . .
> . . . .. The procedural injury implicit in agency failure to prepare an EIS—the creation of a risk that serious environmental impacts will be overlooked—is itself a sufficient 'injury in fact' to support standing, provided this injury is alleged by a plaintiff having a sufficient geographical nexus to the site of the challenged project that he may be expected to suffer whatever environmental consequences the project may have. 521 F.2d at 670–71.

In this case, the City and County has alleged that environmental aspects of the outlease to Triple A were overlooked, i. e., that local land use policies and the attributes of the port were overlooked, due to failure to prepare an EIS. This is sufficient injury. The geographical nexus of the plaintiff to the area is also sufficient, since Hunter's Point is located within the boundaries of the City and County. The City's interests will suffer from any environmental damage caused by Triple A's use of the yard.

*City of Davis v. Coleman* also indicates that plaintiff's alleged injury is within the zone of interests protected by NEPA. The court indicated in that opinion that California municipalities have substantial responsibility for the quality of the environment. Accordingly, the court held that "Davis' municipal interests fall within the scope of NEPA's protections." 521 F.2d at 672. Similarly, San Francisco's municipal interests fall within the scope of NEPA in this case.

Moreover, NEPA is intended to protect certain procedural interests of local agencies. Thus, in *City of Davis v. Coleman* the court held: "The fact that § 102(2)(c) expressly contemplates local government participation in the EIS review process also indicates that Davis is 'arguably within the zone' of NEPA's procedural safeguards." 521 F.2d at 672. In this case, San Francisco has also alleged a sufficient procedural injury to establish standing.

12. For a similar result, *see City of Santa Clara California v. Kleppe,* 418 F.Supp. 1243 (N.D. Cal.1976).

Even if it did adequately state a claim, the federal defendants are entitled to summary judgment for the reasons set forth in the court's disposition of the eighth cause of action.

#### c. Defendants' Compliance with NEPA

 Assuming arguendo that a claim is stated, the federal defendants request summary judgment on the ground that the Navy's determination that an EIS was not required for this outlease constitutes full compliance with the requirements of NEPA.

Pursuant to Navy regulation, a Candidate Environmental Impact Statement (CEIS) was prepared for the outleasing of Hunter's Point. The CEIS Review Panel met in May 1974 to review the CEIS. Their discussion reflects that no issue of "environmental controversy" was associated with the outlease. The record indicates a unanimous vote not to require the preparation and filing of a draft EIS. The affidavit of Edward W. Johnson, Chairman of the CEIS Review Panel, further indicates that it was the panel's "judgment that the environmental effects associated with the leasing would not be 'significant' within the meaning of NEPA."

 In reviewing a NEPA claim based upon a failure to file an EIS, this court must determine if the finding that an EIS is unnecessary because the proposed project will not significantly affect the environment was a reasonable conclusion. *City of Davis v. Coleman*, 521 F.2d 661, 673 (9th Cir. 1975). The determination in this case was reasonable. The intent of the outleasing project was to retain the essential character of the Shipyard by leasing it to commercial firms for the same type of activity which the Navy had conducted when the property was a military facility. The CEIS was comprehensive and discussed numerous environmental considerations. It included an analysis of the alternatives of non-use or returning the property to military use. The committee certainly had sufficient informa-

tion before it from which it could reasonably conclude that no significant environmental effect would follow from the outleasing project.

The fact that neither the CEIS itself nor the review panel considered the alternative of utilization of the property for port purposes does not alter this conclusion. There was no contemplation of use of the property for that purpose. If anything, this use would have contemplated a greater environmental effect rather than minimizing harm to the environment from the proposed project. For this reason and the reasons stated previously in this opinion, it was not necessary to file an EIS based upon this factor.

By preparing the CEIS and reasonably determining that the outlease would not significantly affect the environment, the defendants complied with NEPA and are entitled to summary judgment on this claim.

#### 3. Non-Compliance with the Coastal Zone Management Act

 In its eighth cause of action, plaintiff seeks to have the lease set aside on the grounds that the Navy did not comply with the provisions of the Coastal Zone Management Act, 16 U.S.C. § 1451 *et seq.* More specifically, the City and County contends that no attempt was made by the defendant agency to conform the outlease of the Shipyard to the plan of BCDC, the San Francisco Bay Conservation and Development Commission, as required by 16 U.S.C. § 1456(c)(2).[13]

The Coastal Zone Management Act itself contains no provision for judicial review of agency action. Therefore, plaintiff's standing must be established under 5 U.S.C. § 702. Defendants contend that it is only BCDC and not this plaintiff who have standing to complain in this instance. That is not the case.

The "injury in fact" and "zone of interest" elements of the *Data Processing,* 345 U.S. at 152, 90 S.Ct. 827, standing test are

---

**13.** 16 U.S.C. § 1456(c)(2) provides:

Any Federal agency which shall undertake any development project in the coastal zone of

a state shall insure that the project is, to the maximum extent practicable, consistent with approved state management programs.

satisfied. Plaintiff alleges that the non-conformance to the BCDC plan will result in "extensive dredging and waterfront construction" to other portions of San Francisco Bay. In other words, their charge is that failure to conform to local land use plans means that Hunter's Point will not be used as a port, and port development elsewhere will be necessary. Such construction would have to be undertaken by the plaintiff City and County and constitutes both possible economic detriment as well as esthetic and environment harm. The City and County thus suffers an alleged "distinct and palpable injury to himself." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

Since plaintiff has the authority and responsibility for administering the Port of San Francisco, this alleged injury affects the City's interest in protecting the environmental integrity of those portions of the San Francisco Bay under its control and insuring the most effective use and management of this resource. As such, it falls within the zone of interests sought to be protected by the Coastal Zone Management Act.

■ However, although the requisite standing is present, defendants are entitled to summary judgment. The Coastal Zone Management Act, 16 U.S.C. § 1456(c)(2), requires federal compliance with "approved state management programs." The lease to Triple A was effective on July 1, 1976. The applicable BCDC program was not approved until February 16, 1977, some eight months later. There is no possibility of improper agency action since no approved land use program was in existence.[14]

## II. CLAIMS FOR DAMAGES

In addition to the declaratory and injunctive relief requested, plaintiff seeks to recover $500,000,000 in damages in each of the second, third and fifth causes of action. The specific allegations in each of these claims may be identified as follows:

1. In the second cause of action, the defendants sued individually are named in a conspiracy claim to violate 10 U.S.C. § 2667 and 10 U.S.C. §§ 2202 through 2211 and the regulations adopted pursuant thereto in order to further Triple A's interests and thwart the public interest. It is further alleged that these defendants conspired to frustrate the principles of fair dealing and arms-length negotiation. The federal defendants involved in this cause of action include Ginn, Turnbull and Burk; the non-federal defendants are Engel and LeGette.

2. The third cause of action alleges a claim of misrepresentation against Triple A, Engel and LeGette. The contention is that Triple A misrepresented to plaintiff that upon obtaining the lease from the Navy, a sublease of 376 acres would be given to plaintiff for the sum of $1.00 per year for the purpose of developing a deep water port facility. According to plaintiff, Triple A is now seeking to lease this same land for approximately $ 2–4 million per year.[15] Defendant Coldwell Banker Co. is named in the allegation as the real estate agent involved in the subleasing. The United States and "its employees" are joined in the claim on the grounds that they failed to take affirmative action to safeguard the lease negotiation from abuse and mismanagement.

3. Defendants Burk and Turnbull are named in the fifth cause of action as acting in conflict of interest and breach of fiduciary duty.[16] Triple A defendants Engel and LeGette are alleged to have acted in combination with these federal employees.

### A. *Federal Statutory Claims*

■ The claims for damages asserted in the second cause of action pursuant to

---

**14.** This court need not reach the question of whether the Shipyard falls within the "coastal zone" definition (16 U.S.C. § 1453(a)) or whether the lease constituted a development project within the meaning of 16 U.S.C. § 1456(c)(2).

**15.** See Footnote 2, *supra.*

**16.** The conflict of interest allegation is based upon the subsequent employment of defendants Burk and Turnbull upon retirement from the Navy. Both were involved in the government's evaluation of the various bids. Turnbull left the Navy on June 30, 1976 and was em-

10 U.S.C. § 2667, 10 U.S.C. §§ 2202–2211 and any applicable regulations must be dismissed. A private cause of action for damages cannot be implied from the military leasing statute, 10 U.S.C. § 2667. Nor can one be implied from the Planning and Coordination Chapter of the statutory scheme governing service, supply and procurement, 10 U.S.C. §§ 2202–2211. None of these statutes satisfy the criteria for. implication of a private right of action on behalf of the plaintiff from a civil statute as set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1974) and followed most recently by the Ninth Circuit in *Starbuck v. City and County of San Francisco,* 556 F.2d 450 (9th Cir. 1977).

■ The absence of any claim existing under these statutes precludes the maintenance of a civil conspiracy claim alone based upon violation and non-compliance with their provisions. *Tri-Tron International v. Velto,* 525 F.2d 432 (9th Cir. 1975).

■ Nor can a federal right of action be discerned in the fifth cause of action. Plaintiff alleges no statutory foundation to support its claim. If it is premised upon the federal criminal conflict of interest statutes, 18 U.S.C. § 201 and § 208, this court declines to find that they may be construed to imply a private right of damages against either the federal employees allegedly acting improperly or against the private defendants accused of acting in combination with such employees. *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Savini Construction Co. v. Crooks Brothers Construction Co.,* 540 F.2d 1355, 1358 (9th Cir. 1974).

### B. *Other Federal Claims*

■ To the extent that plaintiff in the second, third or fifth cause of action is attempting to recover damages based upon an implied contract theory obligating the government to deal fairly with bidders, *Armstrong & Armstrong, Inc. v. United States,* 514 F.2d 402 (9th Cir. 1975), its claim must also fail. Jurisdiction under

such an implied contract theory against the United States must be based upon the Tucker Act, 28 U.S.C. § 1346(a)(2). However, jurisdiction under that section is limited to $10,000. The alleged damages of $500,000,000 in this suit are well over that jurisdictional limit. Similarly, a claim under the same theory against the individual federal defendants also fails. The implied contract can only be with the United States and thus the action could only be maintained against these individuals in their official capacity. Since any judgment in this instance would operate against the United States, a suit against them in name is in reality against the United States. *Larson v., Domestic and Foreign Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Absent jurisdiction under the Tucker Act, there is no consent to suit and the doctrine of sovereign immunity precludes such an action. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

### C. *Claim Against United States in the Third Cause of Action*

■ The action implicating the United States in the alleged misrepresentation by Triple A to plaintiff is barred by the doctrine of sovereign immunity. The United States may not be sued without its consent. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The APA does not constitute a waiver in a suit for damages. *Kipperman v. McCone,* 422 F.Supp. 860, 868 (N.D.Cal.1976). Nor is consent provided under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) since any claim arising out of misrepresentation, deceit or interference with contract rights is excepted pursuant to 28 U.S.C. § 2680(h).

### D. *Non-Federal Claims*

#### 1. *Against Triple A, Engel, LeGette and Coldwell Banker*

As the foregoing establishes, plaintiff has failed to allege a viable federal claim against these defendants. They are not proper defendants in an action pursuant to the Administrative Procedure Act, 5 U.S.C.

ployed by defendant Triple A on July 19, 1976. Defendant Burk is alleged by plaintiff in its

opposition brief to have taken employment with a firm doing substantial work for Triple A.

§ 701 *et seq.* Nor can a private right of action be asserted by plaintiff pursuant to the leasing or procurement statutes and regulations or the criminal conflict of interest provisions. For this reason, the court lacks subject matter jurisdiction over any claim asserted against these parties.

■ These defendants are before this court solely as pendent parties and must therefore be dismissed. The Ninth Circuit recently established in *Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977), *cert. granted,* — U.S. —, 98 S.Ct. 50, 54 L.Ed.2d 70 (Oct. 3, 1977), that jurisdiction may not be exercised over pendent parties absent an independent basis of federal subject matter jurisdiction.

■ Plaintiff may indeed have substantial state claims against these defendants arising out of the circumstances involving this lease, but those claims are not properly before this court. Therefore, defendants Triple A, Engel, LeGette and Coldwell Banker are dismissed.

### 2. *Against Federal Employees*

■ Any claims against the federal employees individually arising under state law must also be dismissed under the pendent party doctrine. *Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977), *cert. granted,* — U.S. —, 98 S.Ct. 50, 54 L.Ed.2d 70 (Oct. 3, 1977). The state claims are the sole remaining causes against Ginn, Burk and Turnbull. Plaintiff has failed to establish an adequate federal basis for asserting claims for damages against these individuals. To the extent that claims for review were raised under the Administrative Procedure Act, they may be directed only at the officials who hold the responsibility for the agency action, the Secretary of Defense and the Secretary and Assistant Secretary of the Navy. The same is true of any claim asserted under the Freedom of Information Act. No independent federal subject matter jurisdiction exists over claims asserted against these individuals.

### III. FREEDOM OF INFORMATION ACT

■ In its fourth cause of action, the City seeks to obtain all documents relating to the leasing of Hunter's Point Naval Shipyard in the custody of the U. S. Navy. This claim is brought pursuant to the Freedom of Information Act, (FOIA) 5 U.S.C. § 552.

Defendants contend the claim must be dismissed as moot since the entire file of the Naval Sea Systems Command relating to the Shipyard has since been produced.

The claim is moot only if this court determines that the only documents requested and for which administrative remedies have been exhausted were those possessed by the Naval Sea Systems Command. The documents presented to the court on this motion do not indicate this to be the case. In its letter of appeal to the General Counsel dated January 17, 1977, the City does request "the entire file of the United States Navy, Naval Sea Systems Command, pertaining to the out-leasing of the Hunter's Point Naval Shipyard." However, the letter goes on further to request "the evaluation sheets, re-evaluation sheets, and the other documents not heretofore provided . . . ." To the extent that these records are contained in Navy files other than those of the Naval Sea Systems Command, the FOIA claim of the City is not moot. The motion to dismiss and for summary judgment on this claim is denied.

### IV. SUMMARY

IT IS HEREBY ORDERED that:

1. The first, second, third, fifth and seventh causes of action be dismissed.

2. The federal defendants' motion to dismiss and for summary judgment be denied with regard to the fourth cause of action.

3. Summary judgment be granted in favor of the federal defendants as to the sixth cause of action.

4. Summary judgment be granted in favor of the federal defendants as to the claim stated in the eighth cause of action.