**David CONGER, et al., Plaintiff,**

v.

**DANEK MEDICAL, INC., et al., Defendants.**

**No. 4:96–CV–739–A.**

United States District Court, N.D. Texas, Fort Worth Division.

Aug. 18, 1998.

---

James B. Manley, Attorney at Law, Manley & Alter, Pasadena, TX, Timothy Michael Hoch; Attorney at Law, Mark Stewart & Associates, Fort Worth, TX, John J. Cummings, III, Attorney at Law, Donna S. Cummings, Frank C. Dudenhefer, Jr., Cummings Cummings & Dudenhefer, New Orleans, LA, Darryl J. Tschirn, Eric A. Thomson, Tschirn & Thomson, La Jolla, CA, for David Conger, Ronald Gene Penny, Teresa R. Penny.

Sheree L. McCall, Attorney at Law, Kurt Wood Meaders, Attorney at Law, Strasburger & Price, Dallas, TX, Philip H. Lebowitz, Pepper Hamilton & Scheetz, Philadelphia, PA, for Danek Medical, Inc., Sofamor–Danek

Group, Inc., Warsaw Orthopedic Inc., George Rapp, Spinal Science Advancement Foundation, Sofamor SNC, Sofamor Inc., Richard W. Treharne, Ph.D., Ermon R. Pickard.

Sheree L. McCall, Attorney at Law, Kurt Wood Meaders, Attorney at Law, Strasburger & Price, Dallas, TX, Margaret S. Woodruff, Schnader Harrison Segal & Lewis, Philadelphia, PA, for Gary Lowery, Thomas Whitecloud, III, Thomas A. Zdeblick.

Sheree L. McCall, Attorney at Law, Kurt Wood Meaders, Attorney at Law, Strasburger & Price, Dallas, TX, James F. Roegge, Meagher & Geer PLLP, Minneapolis, MN, for Ensor Transfeldt.

Sudie Thompson, Attorney at Law, McCauley MacDonald & Devin, Dallas, TX, Susan S. Wettle, Attorney at Law, Ann E. Eberle, Attorney at Law, Steven M. Crawford, Gregory A. Bolzle, Brown Todd & Heyburn, Louisville, KY, Carl Arthur Henlein, Brown, Todd & Heyburn, Louisville, KY, for Youngwood Medical Specialties Inc.

James Hill Holmes, III, Attorney at Law, Joann N. Wilkins, Attorney at Law, David Weaver, Attorney at Law, Burford & Ryburn, Dallas, TX, Mitchell A. Stearn, Attorney at Law, K. Thomas Shahriari, Attorney at Law, Porter Wright Morris & Arthur, Washington, DC, David M. Rownd, Attorney at Law, Norman P. Jeddeloh, Attorney at Law, Burditt & Radzius, Chicago, IL, for American Academy of Orthopedic Surgeons.

W. Lee Kohler, Joseph L. McReynolds, Douglas R. Elliott, Deutsch Kerrigan & Stiles, New Orleans, LA, James Hill Holmes, III, Attorney at Law, Joann N. Wilkins, Attorney at Law, David Weaver, Attorney at Law, Burford & Ryburn, Dallas, TX, Janet L. MacDonell, Attorney at Law, Deutsch Kerrigan & Stiles, New Orleans, LA, for Scoliosis Research Society.

Vincent Steven Walkowiak, Attorney at Law, James Jeffery Richardson, Attorney at Law, Fulbright & Jaworski, Dallas, TX, Michael R. Fruehwald, Barnes & Thornburg, Indianapolis, IN, for ACE Medical Company, Depuy–Motech Inc.

Vincent Paul Slusher, Attorney at Law, Snell Brannian & Trent, Dallas, TX, George J. Murphy, Hecker Brown Sherry & Johnson, Philadelphia, PA, for Advanced Spine Fixation Systems Inc.

Kyle W. Johnson, Attorney at Law, Christine Van Vooren, Attorney at Law, David Goodman & Madole, Dallas, TX, Lawrence A. Mann, Attorney at Law, Stanton E. Shuler, Jr., Attorney at Law, Leake & Anderson, New Orleans, LA, for Cross Medical Products.

Daniel R. Barrett, Attorney at Law, Fielding Barrett & Taylor, Fort Worth, TX, Sally I. Gaden, Montgomery Barnett Brown Read Hammond & Mintz, New Orleans, LA, for Smith & Nephew Richards Inc.

Bradley N. Gahm, Attorney at Law, Cozen & O'Connor, Dallas, TX, for Synthes USA.

Robert R. Reeder, Attorney at Law, Cozen & O'Connor, Philadelphia, PA, Bradley N. Gahm, Attorney at Law, Cozen & O'Connor, Dallas, TX, for Synthes Inc., Synthes North America Inc.

Robert R. Reeder, Attorney at Law, Cozen & O'Connor, Philadelphia, PA, for Synthes AG.

Roy Lee Stacy, Attorney at Law, Calhoun & Stacy, Dallas, TX, Thomas G. Stayton, Attorney at Law, Leslie S. Rogers, Baker & Daniels, Indianapolis, IN, Albert J. Dahm, Attorney at Law, Baker & Daniels, Fort Wayne, IN, for Zimmer, Inc.

*MEMORANDUM OPINION and ORDER*

McBRYDE, District Judge.

Came on for consideration the motion of defendants American Academy of Orthopaedic Surgeons ("AAOS") and the Scoliosis Research Society ("SRS") (collectively the "medical associations") for summary judgment. The court, having considered the motion, the response of plaintiffs, David Conger, Ronald Gene Penny ("Penny"), and Teresa R. Penny, the reply, the record, the summary judgment evidence, and applicable authorities, finds that the motion should be granted.

## I.

### *Plaintiff's Claims*

The court recently described the nature of this action in a memorandum opinion and

order signed June 18, 1998, pertaining to a motion of certain defendants to dismiss. Significantly, the only remaining claim against the medical associations is one for conspiracy. In his memorandum and order dated April 16, 1997, and corresponding pretrial order number 861, Judge Bechtle, United States District Judge for the Eastern District of Pennsylvania, presiding over MDL docket number 1014, dismissed plaintiffs' conspiracy claims except to the extent that they are urging a common law conspiracy to defraud by active concealment. Specifically, Judge Bechtle noted, "[a]ccordingly, Plaintiffs are left with a slimmer Intercompany/Association Conspiracy comprising only the agreement to promote a Class III device without FDA approval by unlawful means (actively concealing material facts at the association-sponsored seminars/sales events)." April 16, 1997, Memorandum and Order at 28–29, 1997 WL 186325, at *12. As Judge Bechtle noted, whether any MDL plaintiff could prevail on such a claim is a matter of state law. *Id.* at 29, 1997 WL 186325 at *12.

■ Plaintiffs continue to contend that they have a claim for conspiracy to violate the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–96, ("FDCA") the medical device amendments to the Act, and FDA regulations. Any such claim has been foreclosed by Judge Bechtle's orders. And, in any event, plaintiffs cannot circumvent the FDCA by labeling their claim as one for conspiracy to obtain remedies the statute does not provide. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 856 F.Supp. 990, 1009 (E.D.Pa. 1994), *aff'd*, 54 F.3d 1125 (3d Cir.1995); *City and County of San Francisco v. United States*, 443 F.Supp. 1116, 1129 (N.D.Cal. 1977), *aff'd*, 615 F.2d 498 (9th Cir.1980). The alleged wrongful act underlying a conspiracy must be actionable against the individual conspirators. *Fisher v. Yates*, 953 S.W.2d 370, 381 (Tex.App.—Texarkana 1997, no writ); *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 82 (Tex.App.—San Antonio 1996, writ denied). Since there is no private right of action under the FDCA, there can be no conspiracy claim based on such a violation. Indeed, Judge Bechtle noted that, under Texas law, plaintiffs would have no standing to assert that defendants engaged in a conspiracy to violate the FDCA because the statute does not provide for a private right of action. 4/16/97 memorandum and order at 25 (citing *Hawkins v. Upjohn Co.*, 890 F.Supp. 609, 611 (E.D.Tex.1994)).[1]

## II.

### Grounds of the Motion

The medical associations urge six grounds in support of their motion. First, the medical associations did not agree to defraud anyone. Second, the medical associations did not conceal any fact. Third, the allegedly concealed facts were not material. Fourth, there was no fraudulent intent. Fifth, there was no reliance or causation. And, sixth, plaintiffs' claims are barred by the applicable statute of limitations.

## III.

### Undisputed Facts

The summary judgment evidence establishes the following undisputed facts:

The Food and Drug Administration ("FDA") regulates how manufacturers label medical devices and drugs; the FDA does not regulate the practice of medicine. Physicians routinely use products for "off-label" purposes, that is, they use drugs and other devices for purposes other than those approved by the FDA. Such off-label use is appropriate, rational, and accepted medical practice and can be of great value.

On May 19, 1992, the Luque device was implanted in Conger; on September 2, 1992, the Texas Scottish Rite Hospital device was implanted in Penny. At the time of the implantations, neither device had received FDA approval to be marketed and sold for the purpose used. Nevertheless, pedicle fixation procedures were and are routinely taught in residency programs and are regu-

---

**1.** In addition to the foregoing authorities, the court notes that the recent opinion of Judge Lamberth in *Washington Legal Found. v. Friedman* further guts any contention that liability could arise from the sharing of information regrading unapproved uses of various products. 13 F.Supp.2d 51, No. Civ.A. 94–1306(RCL), 1998 WL 456372 (D.D.C. July 30, 1998).

larly used by surgeons. And, pedicle fixation with screws has been considered to be the standard of care by the surgical community.

Plaintiffs' physician, Dr. Hinkley, has been a board-certified orthopedic surgeon since 1981. Prior to the Conger and Penny surgeries, Dr. Hinkley had performed several hundred pedicle screw surgeries. Dr. Hinkley knew of the status of FDA bone screw labeling and was not misled into believing that such use had been approved by the FDA. Dr. Hinkley knew that it was not uncommon for doctors to have a financial interest or consulting agreement or royalty arrangement with manufacturers. Such arrangements were disclosed and discussed at meetings and seminars he attended and it was not so uncommon that he would not look for bias in each and every paper as he sat there and listened to it. Dr. Hinkley made his decisions to recommend or use devices and procedures based upon the exercise of his medical judgment to identify the treatment that was the best available option for each of his patients. Dr. Hinkley was well aware of the possible risks, complications, and benefits of pedicle fixation with screws. He has a peer-reviewed personal fusion rate of 97% with pedicle fixation with screws, as opposed to a 60 to 70% fusion rate without pedicle fixation with screws. He continues to use pedicle fixation with screws and, as of July 1997, had performed almost 1,000 spinal fusion operations employing pedicle fixation with screws.

## IV.

*Applicable Summary Judgment Principles*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. The movant may dis-

charge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597, 106 S.Ct. 1348.

## V.

*Law Pertinent to the Case*

■ To establish a conspiracy claim, as plaintiffs seek to do, they must prove both civil conspiracy and underlying fraud or concealment.[2] *American Tobacco Co. v. Grin-*

---

**2.** As noted earlier, the alleged wrongful act, that is the underlying fraud, must be actionable

against the individual conspirators. *Fisher v.*

*nell,* 951 S.W.2d 420, 438 (Tex.1997). An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983). The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Id.*

■■ Under Texas law, the elements of actionable fraud are: (1) a material representation; (2) the representation was false; (3) the speaker knew the representation was false when he made it or he made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker intended the plaintiff to rely on the statement; (5) the plaintiff relied on the representation; and (6) as a result, the plaintiff was injured. *American Tobacco Co.,* 951 S.W.2d at 436; *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 723 (Tex.1990). When the circumstances impose a duty to speak, silence is a false representation.[3] *American Tobacco,* 951 S.W.2d at 436. And, the allegedly defrauded party must have reasonably relied on the silence to his detriment. *Id.* Fraud is never presumed and, when it is alleged, the facts sustaining it must be clearly shown. *Stephanz v. Laird,* 846 S.W.2d 895, 903 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

■■ The statute of limitations for a conspiracy claim such as the one asserted here is two years. *Stroud v. VBFSB Holding Corp.,* 917 S.W.2d 75, 82 (Tex.App.—San Antonio 1996, writ denied). The statute of limitations begins to run when the plaintiff discovers, or with the exercise of reasonable diligence, should have discovered the nature of his injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990); *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990).

*Yates,* 953 S.W.2d 370, 381 (Tex.App.—Texarkana 1997, no writ).

3. A failure to disclose information is not fraudulent unless one has an affirmative duty to disclose, such as where a confidential or fiduciary

## VI.

### Law Applied to the Facts

Here, as in the *Leigh*[4] case, plaintiffs devote their attention to claims no longer a part of the case. Once again, plaintiffs assert the existence of certain facts and cite to summary judgment evidence that does not support a contention that those facts could be inferred from such evidence, much less establish those facts. For example:

(1) Plaintiffs state that there is "no valid scientific evidence that the TSRH or Luque devices—or any other pedicle screw fixation device—are safe and effective." Plaintiffs' response at 11. The affidavit to which they refer simply states that the affiant, based on his review of the literature, "cannot determine with any degree of certainty how safe or efficacious pedicle screws are in comparison to other available, approved procedures." Affidavit of Donna Cummings, Vol. II, Ex. 32, affidavit of Stephen E. Kimmel, M.D., M.S., at ¶ 41.

(2) Further, plaintiffs state: "The Medical Associations approved future courses with the same goal of promoting the use of pedicle screw fixation devices, and advertised and promoted pedicle screw fixation on every front." Plaintiffs' response at 12. Citations are to minutes of meetings of the board of directors of SRS and to the deposition of Edgar G. Dawson, M.D., apparently speaking on behalf of SRS. The board minutes simply reflect a motion being made, seconded and passed to approve an advanced pedicle fixation course to be held in Dallas, Texas, in the spring of 1990, *see* Ex. 17 at 17889, for an advanced pedicle fixation workshop in 1991, *see* Ex. 18 at 17867, and to approve the proposed 1992 basic and advanced pedicle fixation courses, *see* Ex. 20 at 17806. The deponent simply states that he made a recommendation to the board to continue these courses and that manufacturers would continue to support the courses as they had in the past. Ex. 7 at 106–07.

relationship exists between the parties. *Stephanz v. Laird,* 846 S.W.2d 895, 904 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

4. *Leigh v. Danek Med., Inc.,* 1998 WL 672701, No. 4:95–CV–797–A (N.D.Tex.).

(3) Plaintiffs further state that their surgeon, Dr. Hinkley, attended a February 16, 1991, Louisville, Kentucky, seminar. Exhibit 47, to which they cite, is apparently part of the curriculum vitae of Dr. Hinkley, but does not reflect that he attended such seminar. Exhibit 53, to which they additionally refer, is apparently a copy of the agenda from that meeting. Attached thereto is a document titled "Surgeon Profile Sheet" but there is no indication who filled out the sheet or what it might mean.

■ In this case, *contra Leigh*, plaintiffs assert that defendants committed a fraud on the market. They apparently seek to use this theory to overcome their lack of proof of reliance and causation. The authorities cited are not germane to the issues presented here.[5] As previously noted, plaintiffs have not come forward with evidence to support the premise of their theory, that is, that there is no valid scientific data to demonstrate the safety and efficacy of pedicle fixation with screws.

■ Plaintiffs have failed to come forward with any evidence to support a claim of actionable fraud. In particular, they have failed to come forward with summary judgment evidence to raise genuine fact issues as to an agreement between the medical associations and any other person, concealment of any fact, fraudulent intent, reliance, and causation. There is no evidence that plaintiffs' surgeon, Dr. Hinkley, was in any way defrauded. Rather, Dr. Hinkley's deposition testimony that he was aware of the FDA status of bone screw labeling and that he was aware of the risks, complications, safety and efficacy of pedicle fixation with screws is uncontroverted. Accordingly, the medical associations are entitled to judgment in their favor.[6]

## VII.

### ORDER

For the reasons discussed herein, the court orders that the medical associations' motion for summary judgment be, and is hereby, granted; that plaintiffs take nothing on their claims against the medical associations; and that such claims be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the disposition of plaintiffs' claims against the medical associations.

---

**5.** *E.g., Heastie v. Community Bank,* 125 F.R.D. 669 (N.D.Ill.1989), and *Smith v. MCI Telecomm. Corp.,* 124 F.R.D. 665 (D.Kan.1989), pertain to class certification issues in RICO suits.

**6.** Because plaintiffs have not raised a genuine issue of material fact to preclude summary judgment, there is no need for the court to discuss the contention that their claims are barred by limitations.