James C. HANCOCK, Appellant,

v.

The BUREAU OF NATIONAL AFFAIRS, INC., Appellee.

No. 93–CV–109.

District of Columbia Court of Appeals.

Argued March 3, 1994.
Decided July 28, 1994.

Gary Howard Simpson, Bethesda, MD, for appellant.

Susan F. Wiltsie, with whom A. Neal Barkus, Washington, DC, was on the brief, for appellee.

Before SCHWELB and KING, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

On July 20, 1992, appellant brought suit against The Bureau of National Affairs, Inc. (BNA) (his former employer) for constructive discharge, alleging that he had been forced to retire due to BNA's discriminatory conduct toward him. Appellee BNA moved for summary judgment and appellant now appeals the trial court's grant of that motion.

The trial court concluded that the applicable one-year statute of limitations ("SOL") for appellant's constructive discharge action could begin to run no later than the date appellant decided to retire. Appellant submitted a memorandum to BNA announcing his retirement thirteen months prior to filing this suit. The trial court found that appellant failed to create a genuine issue of material fact tending to show that appellant decided to retire any time subsequent to the submission of the memorandum. Thus, the trial court held that the one-year SOL had expired prior to appellant bringing suit and therefore granted BNA's motion for summary judgment. We affirm.

The relevant facts, as found by the trial court, are as follows. Appellant reported to work for the last time on June 20, 1991. On that day, appellant submitted a memorandum to BNA announcing his decision to retire due to BNA's discriminatory conduct toward him, and stating that he would begin taking his seven weeks of accrued vacation the following day. On June 26, 1991, appellant's attorney wrote a letter to BNA stating that appellant had retired "effective June 20, 1991" and referring to appellant as a "retired employee." Later, at his deposition, appellant confirmed that his last day of work was June 20, 1991.

In the days following the submission of his memorandum on June 20, appellant had discussions with BNA regarding the amount of salary and commission he was owed for work completed prior to June 20, and other matters. On August 16, 1991, as a follow-up to these discussions, BNA sent a letter to appellant stating that July 31, 1991, was appellant's retirement date. This date was chosen consistent with BNA's practice of retiring employees at the end of the last *full* month during which they remained on the pay roll. The amount of appellant's accrued leave remaining at the end of July was insufficient to carry him through to the next retirement date at the end of August.

On July 20, 1992, thirteen months after submitting the memorandum announcing his resignation, appellant brought suit against BNA for constructive discharge pursuant to the District of Columbia Human Rights Act, D.C.Code § 1–2501 *et. seq.* (1992 Repl.).

The District of Columbia Human Rights Act prohibits the discharge of an employee based upon several factors, including age. D.C.Code § 1–2512(a)(1). Complaints alleging violations of the Act must be filed "within 1 year of the occurrence of the unlawful discriminatory practice, or the discovery thereof...." D.C.Code § 1–2544(a).

This case involves a constructive discharge, which is distinguished from a regular discharge (termination) in that it occurs "when the employer deliberately makes working conditions intolerable and drives the employee into an involuntary quit." *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1101 (D.C. 1986). Thus, a constructive discharge requires the employee's affirmative act of quitting whereas a regular discharge is accomplished by the employer's act of dismissing the employee.

In this case, the parties disagree as to when a constructive discharge is complete and thus, when the SOL for the discrimination alleged here began to run. Appellant argues that the SOL should not start to run until the *effective* date of his retirement (July 31, 1991), reasoning that prior to that date it was possible that he and BNA would reach some kind of accommodation that would result in appellant abandoning his plan to retire. BNA focuses on the language of the applicable SOL, D.C.Code § 1–2544(a), *supra*, contending that the nature of constructive discharge requires that any adverse employment action compelling appellant to retire necessarily had to occur on or prior to the day that appellant *decided* to retire and therefore occurred more than one year prior to the filing of the lawsuit.

This court has not previously ruled on this particular question. BNA's position is, however, supported by decisions from other jurisdictions. When ruling on constructive discharge actions which implicate a SOL that is triggered by the commission of discriminatory acts, other courts have focused their inquiry upon identifying the "last possible date on which an unlawful employment practice could have occurred." *Lowell v. Glidden–Durkee, Div. of SCM Corp.*, 529 F.Supp. 17, 19 (N.D.Ill.1981). These courts have rejected contentions that the date that a forced retirement or resignation becomes *effective* should serve as the trigger for the SOL rather than the date upon which the decision to retire or resign is announced. *See id.; Douchette v. Bethel School Dist. No. 403,* 117 Wash.2d 805, 818 P.2d 1362, 1367 (1991) (*en banc*); *Lange v. Cigna Individual Financial Serv. Co.,* 766 F.Supp. 1001, 1004 (D.Kan.1991); *cf. Delaware State College v. Ricks,* 449 U.S. 250, 259, 101 S.Ct. 498, 504–05, 66 L.Ed.2d 431 (1980) (SOL began to run on date teachers were notified of denial of tenure not on final day of contract); *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (SOL began to run on date that administrators received notification that their appointments would be terminated at a

specified future date not on date of actual termination).

We affirm the trial court's adoption of the reasoning of these cases and agree with its conclusion that "the limitations period in this case began at the point when [appellant] decided to retire and gave BNA notice of that decision.... [A]ny discriminatory act constituting the basis of a constructive discharge claim must have occurred before that date...." [1]

A grant of summary judgment is appropriate if the record shows that "there is no genuine issue of material fact." Super.Ct.Civ.R. 56(c). In making this determination, all disputed facts must be construed in the light most favorable to the non-moving party. *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). Thus, once the trial court in this case concluded as a matter of law that the latest point at which the SOL in appellant's constructive discharge action could begin to run was the date that appellant announced his decision to retire, the court's resolution of the motion for summary judgment turned on whether there was any issue of fact from which a jury could find that appellant notified BNA of his decision to leave the company on a date *later than* June 20, 1991, the date the memo was submitted.

In opposition to the motion for summary judgment, appellant submitted an affidavit indicating that subsequent to the submission of his resignation on June 20, 1991, he and BNA had engaged in a dispute about the salary and commission owed to appellant. Appellant referred to these negotiations to support his contention, made *for the first time* in the affidavit, that he had not made a *final* decision to retire on June 20, 1991. Thus, he contradicted his own memo, his attorney's prior letter to BNA, and his own prior deposition testimony.

■ When, on a motion for summary judgment, a judge is confronted with a party's deposition and affidavit which contradict each

---

1. The fact that the day appellant announced his resignation was also his last day at work further supports this conclusion. No discriminatory act supporting a claim of constructive discharge

could occur after the last day that an employee was physically at work. *See Lowell, supra,* 529 F.Supp. at 19–20.

other, the deposition is usually considered more reliable. However, "the court may not exclude the affidavit from consideration in the determination of the question whether there is any genuine issue as to any material issue of fact." 6A J.W. MOORE, MOORE'S FEDERAL PRACTICE § 56.22[1], at 56–756–57 (1993). The courts have noted an exception to this general prohibition against a judge excluding a contradictory affidavit from consideration of a summary judgment motion when the affidavit constitutes an attempt to create a sham issue of material fact. *See, e.g., Pyramid Securities Ltd. v. IB Resolution, Inc.,* 288 U.S.App.D.C. 157, 166, 924 F.2d 1114, 1123, *cert. denied,* — U.S. —, 112 S.Ct. 85, 116 L.Ed.2d 57 (1991); *Rohrbough v. Wyeth Laboratories, Inc.,* 916 F.2d 970, 975–76 (4th Cir.1990); *Farrell v. Automobile Club of Michigan,* 870 F.2d 1129, 1131–32 (6th Cir.1989); *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986); *Miller v. A.H. Robins Co.,* 766 F.2d 1102, 1104 (7th Cir.1985); *Van T. Junkins & Assoc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir. 1984); *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1364 (8th Cir.1983); *Radobenko v. Automated Equip. Corp.,* 520 F.2d 540, 544 (9th Cir.1975); *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969).

◼ The affidavit will be considered if it clarifies confusing or ambiguous deposition testimony or is based on newly discovered evidence or evidence to which the deponent did not have access at the time of deposition. *See, e.g., Pyramid, supra,* 288 U.S.App.D.C. at 166, 924 F.2d at 1123; *Adelman–Tremblay v. Jewel Companies, Inc.,* 859 F.2d 517, 520 (7th Cir.1988); *Franks v. Nimmo, supra,* 796 F.2d at 1237.

◼ Under the circumstances presented in this case the trial court properly disregarded appellant's affidavit in determining whether appellant had raised a genuine issue of material fact as to when he decided to retire. In his deposition on August 12, 1991, appellant testified regarding his retirement as follows:

Q: You waited until the 20th [of June] to decide to retire; is that what you're saying?

A: That's what I'm saying.

. . . .

Q: Your last day of work was the 20th?

A: Yes, sir.

Further, his lawyer wrote a letter to BNA, dated June 26, 1991, in which he stated in pertinent part: "Please be advised that Mr. James C. Hancock ... retired effective June 20, 1991.... It is inappropriate for Jim Hancock, a retired employee, to meet with his Manager, ... either on June 20, 1991, or on Tuesday, July 2, 1991."

"Where a party emphatically and wittingly swears to a fact, it bears a heavy burden— even in the summary judgment context— when it seeks to jettison its sworn statement." *Pyramid, supra,* 288 U.S.App.D.C. at 166, 924 F.2d at 1123. No explanation of the contradiction in appellant's statements and deposition was provided, and therefore, the trial judge properly concluded that there was no genuine issue of material fact as to the last possible date upon which the statute of limitations must have begun to run in this case. Appellant announced his retirement on June 20, 1991, and did not file this lawsuit until July 20, 1992, one month after the applicable statute of limitations extinguished appellant's cause of action.

Accordingly, the trial court's grant of summary judgment is

*Affirmed.*