Terry L. **STROUD**, Appellant,

v.

**VBFSB HOLDING CORPORATION, First Federal Savings Bank, Hugo E. Pimienta, Wilson Fletcher, and Kevin A. Garcia, Appellees.**

Nos. 04–94–00434–CV, 04–95–00573–CV.

Court of Appeals of Texas, San Antonio.

Jan. 24, 1996.

Rehearing Overruled Feb. 28, 1996.

J. Vince Hightower, San Antonio, for Appellant.

Cathy J. Sheehan, Harry S. Bates, Plunkett, Gibson & Allen, Inc., San Antonio, Timothy McCloskey, Rhonda R. Chandler, Chandler & McCloskey, P.C., Houston, Daniel A. Bass, San Antonio, Sam C. Bashara, Law Offices of Sam C. Bashara, P.C., San Antonio, for Appellee.

Before CHAPA, C.J., and HARDBERGER and DUNCAN, JJ.

## OPINION

CHAPA, Chief Justice.

Appellant's Motion for Rehearing is granted, the opinion of this court issued November 8, 1995, is withdrawn, and this opinion is substituted therefore.

### Procedural History

Appellant, Terry L. Stroud, appealed from a summary judgment in favor of appellees First Federal Savings Bank (FFSB), VBFSB Holding Corporation (VBFSB), Kevin A. Garcia, Hugo E. Pimienta, and Wilson Fletcher. Appellant brought suit against appellees, jointly and severally, for wrongful termination, civil conspiracy, intentional infliction of emotional distress, slander, and intentional interference with appellant's contractual employment agreement with appellee FFSB. All appellees filed answers, and appellees FFSB, VBFSB, Pimienta, and Garcia filed counterclaims for Rule 13 sanctions, based on identical allegations that the suit was groundless and brought in bad faith or groundless and brought for the purposes of harassment.[1] All appellees filed motions for summary judgments. Interlocutory summary judgments were granted on February 22, 1994, to appellees FFSB, VBFSB, Pimienta, and Fletcher. The trial court held a hearing on VBFSB's and Pimienta's Rule 13 motions on March 29, 1994, and denied them in an order signed April 12, 1994. The interlocutory summary judgments and the denial of the Rule 13 counterclaims of appellees VBFSB and Pimienta were all incorporated in the final judgment of April 6, 1994, which also granted summary judgment to appellee Kevin Garcia. The judgment failed to dispose of the two Rule 13 counterclaims of FFSB and Garcia, however, and instead severed them into a separate cause of action. The severance was granted over the objections of appellant.

---

1. Although only the Rule 13 claims of Garcia and VBFSB appear in the record, we accept as true appellant's contention that all four claims are identical. Tex.R.App.P. 74(f).

In an opinion dated May 3, 1995, we dismissed this appeal for lack of jurisdiction. *See Stroud v. VBFSB Holding Corp., et al.,* 901 S.W.2d 657 (Tex.App.—San Antonio 1995, no writ). Our mandate issued on June 29, 1995. We found that the trial court's judgment depended upon an improper severance of the two Rule 13 counterclaims to make it a final and appealable judgment. This improper severance thus rendered the summary judgment interlocutory and nonappealable.

After the parties' oral argument before this court and during the pendency of the appeal, the appellees nonsuited the two severed Rule 13 counterclaims on March 31, 1995. Neither appellees nor appellant supplemented the record by filing a supplemental transcript to inform this court of the nonsuit.

▮ The trial court signed a First Amended Final Judgment on July 18, 1995, over objections of appellees, and appellant appealed this Amended Final Judgment, filing his appeal bond on July 27, 1995, in Cause No. 04–95–573–CV. Appellees filed a motion to dismiss appellant's appeal as untimely, contending that the March 31 order of nonsuit disposed of the remaining matters and thereby brought finality to the proceedings below. We agree. An interlocutory order becomes final when a subsequent order disposes of all remaining parties and issues in the case. *H.B. Zachry Co. v. Thibodeaux,* 364 S.W.2d 192, 193 (Tex.1963); *Ramones v. Bratteng,* 768 S.W.2d 343, 344 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Moreover, a party may take a nonsuit and dismiss a cause of action at any time notwithstanding the pendency of an appeal. *Middleton v. Martin,* 508 S.W.2d 495, 496 (Tex.Civ. App.—Austin 1974, no writ). Therefore, the trial court's judgment became final on March 31 and the appellate timetable began to run on that date, making appellant's new appeal untimely and making the Amended Final Judgment of July 18 a nullity. Tex.R.Civ.P. 329b(d); Tex.R.App.P. 41(a)(1). *Compare Ramones,* 768 S.W.2d at 344 (appellate timetable began to run when second order disposing of remaining party was entered, and final judgment incorporating orders disposing of all parties and issues, signed *outside* trial court's plenary jurisdiction, was a nullity) *with Mackie v. McKenzie,* 890 S.W.2d 807, 808 (Tex.1994) (following nonsuit of counterclaim, appellate timetable began to run from time of amended final judgment which was signed *within* trial court's plenary jurisdiction *and* amended judgment modified original judgment).

While we agree with appellees that under the reasoning of our prior decision the nonsuit finalized the summary judgments on March 31, thereby beginning the appellate timetable, we also are acutely aware that appellant was placed in the impossible position of having to perfect a new appeal based on the then-final judgment *before* this court had issued its dismissal of his first appeal.

▮ Appellant has since filed a transcript in Cause No. 04–95–573–CV, which includes the nonsuit order of March 31. With the filing of the transcript, this court now has before it a complete record which illustrates conclusively that all issues and parties in the suit below were disposed of by the trial court prior to the issuance of our opinion, whether properly or improperly, by the severance and nonsuit order. This court may take judicial notice of its own records, and we do so take notice of the nonsuit order. *See Birdo v. Holbrook,* 775 S.W.2d 411, 412 (Tex.App.—Fort Worth 1989, writ denied). We therefore conclude that we did, in fact, have jurisdiction over the appeal at the time our opinion issued. A court of appeals retains plenary jurisdiction over *its* judgments until the end of the term in which it is rendered, unless the exclusive jurisdiction of the supreme court has attached by the filing of an application for writ of error. *See Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 702 & n. 3 (Tex.1990); *Humble Exploration Co. v. Browning,* 690 S.W.2d 321, 323–24 (Tex. App.—Dallas 1985, writ ref'd n.r.e.), *cert. denied,* 475 U.S. 1065, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986). "The term of each court of appeals begins and ends with each calendar year." Tex. Gov't Code Ann. § 22.218 (Vernon 1988). Thus, this court has authority to withdraw its mandate until the end of the term in which it was issued.

Therefore, in order "to obtain a just, fair, equitable, and impartial adjudication of the rights of the litigants under established principles of substantive law," TEX.R.CIV.P. 1, we withdraw our opinion of May 3, 1995, and vacate and recall our mandate of June 29, 1995. Further, we grant appellees' motion to dismiss the appeal in Cause No. 04–95–573–CV as untimely filed. Lastly, we affirm the judgment of the trial court issued April 6, 1994.

## Factual Background

Appellant Terry Stroud was a regulatory official with the Office of Thrift Supervision (OTS). He was in charge of finding a buyer for appellee First Federal Savings Bank (FFSB), which eventually was bought by appellee VBFSB. As the OTS was reducing its workforce, John Scaramozi, Chief Executive Officer of FFSB, offered appellant a position as Senior Vice President with FFSB. He went to work on March 11, 1991. He testified that he decided to resign two days later, on March 13, 1991. He eventually submitted a letter of resignation on June 13, 1991, to be effective Sunday, June 30, 1991. An exit interview was held on June 26, and appellant signed various documents on that date, and the termination notice stated that his "last day of work" was Friday, June 28, 1991. He was paid through June 30. Stroud filed suit against appellees, jointly and severally, on June 29, 1993, alleging causes of action for constructive wrongful termination, civil conspiracy, intentional infliction of emotional distress, slander, and intentional interference with contractual relations.

According to appellant's pleadings, he quickly became disenchanted with FFSB because it became apparent to him that appellee Hugo Pimienta, husband of board member Maria Pimienta, actually controlled the Board of Directors and was attempting to manipulate and control FFSB contrary to the dictates of the Office of Thrift Supervision. OTS had sanctioned Pimienta, and issued Cease and Desist Orders to FFSB which, according to appellant, Pimienta vowed to ignore. Appellant alleged that he feared that he would be implicated in illegal activities and thus subject to criminal liability.

The trial court granted a general summary judgment to appellees on all of appellant's causes of action. Appellant appeals the summary judgment as to all of his claims except the slander cause of action.

## Improper Severance

In his first point of error, appellant contends the trial court erred in severing the sanctions motions of FFSB and appellee Garcia. As explained above, the nonsuit taken on March 31 renders this point moot.

## Limitations

In his second and third points of error, appellant contends that the trial court erred in granting summary judgment on the basis of limitations and because the summary judgment evidence raised questions of fact on each cause of action. While FFSB, VBFSB, Pimienta, and Fletcher asserted various defenses against appellant's claims, including limitations, appellee Garcia's motion for summary judgment relied solely on a defense of limitations.

All of Stroud's actions are subject to the two-year statute of limitations. TEX. CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986). Therefore, the critical enquiry is when each cause of action accrued. "[A] cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy. Put another way, 'a cause of action can generally be said to accrue when the wrongful act effects an injury.'" *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) (quoting *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990) (citation omitted). Moreover, "[t]he fact that damage may continue to occur for an extended period [after the wrongful act] does not prevent limitations from starting to run. Limitations commences when the wrongful act occurs resulting in some damage to the plaintiff." *Murray*, 800 S.W.2d at 828. Finally, a cause of action under the legal injury rule accrues at the first point from which a party may seek a judicial remedy. *Trapnell v. Sysco Food Servs., Inc.*, 850 S.W.2d 529, 551 (Tex. App.—Corpus Christi 1992), *affirmed*, 890

S.W.2d 796 (Tex.1994). "This is the point at which the tort complained of is completed; *i.e.*, when facts supporting each element of the cause of action come into existence." *Id.*

1. Wrongful Termination

■ Stroud's wrongful termination claim is based on the *Sabine Pilot* exception to Texas's employment-at-will doctrine. *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985). *Sabine Pilot* provides a cause of action for wrongful discharge when an employee is dismissed for refusing to perform an illegal act. *Id.* at 735. Appellant alleges that he was constructively discharged, having tendered his resignation because he was asked to engage in illegal acts. While both parties agree that the *Sabine Pilot* exception has never been applied to a constructive discharge, we need not reach the issue of whether such a cause of action exists because we conclude that limitations bar appellant's constructive wrongful termination cause of action.

Assuming *arguendo* that appellant has stated a cause of action, we must determine when the claim accrued. When a cause of action accrues is a question of law. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). Appellant asserts that the action accrued from the effective date of his resignation, June 30, 1991, and therefore his suit was timely filed on June 29, 1993. Appellees argue that the action accrued earlier when the alleged wrongful acts that led to appellant's resignation occurred, or, at the very latest, on his last day of work, June 28, 1991.

■ A constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign. *Hammond v. Katy Indep. Sch. Dist.,* 821 S.W.2d 174, 177 (Tex. App.—Houston [14th Dist.] 1991, no writ). There are no Texas cases discussing when a cause of action for constructive discharge accrues. Appellant relies on *Kline v. North Texas State University,* 782 F.2d 1229 (5th Cir.1986). Kline alleged he was discharged in violation of 42 U.S.C. § 1983 from three positions he held in appellee's medical school. The court held that his cause of action for his removal as associate dean accrued in Novem-

ber of 1978, "the last date of his employment in that position." *Id.* at 1233. This was the time at which a letter terminating him from the deanship was delivered to him. *Id.* at 1230. The date of the accrual of his constructive discharge cause of action relating to his other two positions as chairman of the pediatrics department and professor, however, is not as clear. Kline had taken a leave of absence in August 1979, and his relationship with the school was officially severed on August 31, 1980, when he did not return from leave. The court held that his constructive dismissal cause of action for these two positions, filed on September 1, 1981, was not time barred by the two-year statute of limitations.

Appellant relies on the *Kline* court's wording that the cause of action accrued as to the deanship "on the last date of his employment." The court's discussion in *Kline,* however, does not give the exact last date of employment which, it appears, occurred when Kline received a letter terminating him. Indeed, the court expressly stated, "Each of these separate alleged violations accrues at the time he was terminated from each position, *not simply from the date of his final severance from [appellee].*" *Id.* at 1233 (emphasis added) (citing *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), for the proposition that a cause of action accrues for unlawful dismissal when a plaintiff is informed his employment would be terminated, rather than the actual date of termination). Moreover, the *Kline* court's finding that Kline's other causes of action did not accrue until his final separation from the school is based on the fact that the record was not clear as to whether Kline knew when he left on leave of absence in August 1979 that he would not return afterwards. The court stated, "If Kline knew that he would not resume that position at the end of his leave of absence, the statute of limitations ... began running in August of 1979." *Id.* at n. 6. The court concluded, "we will not say on the record before us that as of August 1979 Kline knew or had reason to know of the injury[.]" *Id.* at 1233. Rather than supporting appellant's position, *Kline* stands for the proposition that a cause of action for

constructive dismissal arises when the party knows of his injury rather than the technical last date of employment.

As noted above, this position is consistent with that of the United States Supreme Court. In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Court overturned an appeals court decision that found a professor's cause of action for wrongful denial of tenure accrued on his last date of employment, rather than on the date tenure was denied. The Court criticized the appeals court's "rule focusing on the last day of employment [as] a 'bright line guide both for the courts and for the victims of discrimination.'" *Id.* at 256, 101 S.Ct. at 503. Instead, the Court stated, "Where, as here, the only challenged employment practice occurs before the termination date, the limitations periods necessarily commence to run before that date." *Id.* at 259, 101 S.Ct. at 505. The Court noted that "mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257, 101 S.Ct. at 504.

The Court, citing its *Ricks* opinion, again found that a cause of action for employment discrimination arises when the operative decision to terminate employment is made and notice given, rather than the designated date on which employment terminates. *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981). The court stated that "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Id.* (emphasis in original).

 While we recognize that the United States Supreme Court decisions cited above do not deal with a common-law action for constructive discharge, we find that the principles expressed therein are compelling. This same rationale has been followed in several jurisdictions. *See, e.g., Hancock v. Bureau of National Affairs, Inc.*, 645 A.2d 588, 590 (D.C.App.1994) (cause of action for constructive discharge accrues at point at which plaintiff decides to retire or gives notice of that decision); *Douchette v. Bethel School District*, 117 Wash.2d 805, 818 P.2d 1362, 1367–68 (1991) (limitations ran from date plaintiff resigned). The *Hancock* court rejected the plaintiff's argument that the statute of limitations should not begin to run until the effective date of his retirement. Instead, it found the trial court's reasoning persuasive and quoted the trial court: "'[T]he limitations period in this case began at the point when [appellant] decided to retire and gave BNA notice of that decision.... [A]ny discriminatory act constituting the basis of a constructive discharge claim must have occurred before that date[.]'" *Hancock*, 645 A.2d at 590. We agree.

In the instant case, the summary judgment evidence reveals that appellant tendered his letter of resignation on June 13, 1991. Therefore, any acts committed by appellees that made appellant's working "conditions so intolerable that [appellant] reasonably fe[lt] compelled to resign" must necessarily have occurred prior to that date. *See Hammond*, 821 S.W.2d at 177. At that point in time, appellant knew of his injury, *i.e.*, his constructive dismissal from his position, and his cause of action accrued. *See Murray*, 800 S.W.2d at 828; *see also Turner v. Richardson Indep. Sch. Dist.*, 885 S.W.2d 553, 559 (Tex.App.—Dallas 1994, writ req'd) (all alleged acts of retaliation must have occurred prior to date of plaintiffs' alleged constructive discharge).

This conclusion is reinforced by decisions holding that worker's compensation claims for wrongful discharge accrue when the employee is informed that his or her employment has been terminated, not on the last day of work. *See, e.g., Sanchez v. Johnson & Johnson Medical, Inc.*, 860 S.W.2d 503, 509 (Tex.App.—El Paso 1993), *aff'd in part, rev'd in part*, 39 S.Ct.J. 110, —— S.W.2d ——, 1995 WL 680899 (November 16, 1995); *Luna v. Frito–Lay, Inc.*, 726 S.W.2d 624, 628 (Tex. App.—Amarillo 1987, no writ) (citing *Ricks* ).

We hold that appellant's constructive discharge claim is barred by limitations.

(2). Intentional Infliction of Emotional Distress

 The applicable statute of limitations for a claim of intentional infliction of emo-

tional distress is two years from the accrual of the cause of action. *Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 211 (Tex.App.—Houston [1st Dist.] 1995, n.w.h.); *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 829 (Tex.App.—Dallas 1994, writ denied). Appellant filed his suit on June 29, 1993. Therefore, appellees' actionable conduct must have occurred after June 29, 1991. In his deposition testimony and in answers to interrogatories, appellant stated that all of the acts giving rise to this cause of action occurred prior to his resignation letter, having occurred in May and early June of 1991. We conclude that appellant's intentional infliction of emotional distress claim is also barred by the statute of limitations.

### (3). Intentional Interference with Contractual Relations

 The two-year statute of limitations applies to a claim for tortious interference with contract. *Muckelroy*, 884 S.W.2d at 829; *First Nat'l Bank v. Levine*, 721 S.W.2d 287, 289 (Tex.1986). As with his claim for infliction of emotional distress, appellant's answers in deposition and to interrogatories conclusively establish that all actions giving rise to the interference with contractual relations claim took place prior to his resignation letter of June 13, 1991. The cause of action therefore accrued no later than that date and is time barred. *See Muckelroy*, 884 S.W.2d at 829–30 (plaintiff's cause of action accrued no later than date she knew of the alleged wrongful conduct and the nature of her injury, damages, and the parties involved).

### Civil Conspiracy

 Appellant alleged that appellees conspired to acquire and illegally control FFSB, thereby damaging appellant, and that they attempted to involve him in illegal actions. An actionable civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). The elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4)

one or more overt unlawful acts; and (5) damages as the proximate result. *Id.* Appellees moved for summary judgment on several defenses. The summary judgment motions of FFSB, VBFSB, Fletcher, and Pimienta asserted that because appellant could sustain no actionable cause of action, no independent cause of action could exist for civil conspiracy. Furthermore, they asserted that a parent corporation and its agents cannot conspire with its wholly owned subsidiary and its agents. Garcia moved for summary judgment solely on the basis of limitations.

 The statute of limitations on a claim for civil conspiracy is two years. *Connell v. Connell*, 889 S.W.2d 534, 541 (Tex.App.—San Antonio 1994, writ denied). Because any conspiratorial acts by appellees to injure appellant must necessarily have occurred prior to his last day at work, the civil conspiracy claim is barred by limitations.

 Moreover, although appellant's petition does not clearly articulate how a conspiracy to control FFSB would cause him personal damages, it appears to rely on the fact that the alleged conspirators' attempts to involve him in allegedly illegal activities resulted in damage to him. "[T]he gist of a civil conspiracy is the damage resulting from commission of a wrong which injures another, and not the conspiracy itself." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968). An actionable conspiracy therefore consists of wrongs that would have been actionable against the individual conspirators. *Schoellkopf v. Pledger*, 778 S.W.2d 897, 900 (Tex. App.—Dallas 1989, writ denied). Generally, if an act by one person cannot give rise to a cause of action, the same act cannot give rise to a cause of action when done pursuant to an agreement between several people. *Id.* Because we have found that all of appellant's causes of action are barred by limitations and he has therefore failed to establish a substantive tort, we hold there is no independent liability for civil conspiracy. *Id.*

In conclusion, because we find that all of appellant's causes of action are barred, his second and third points of error are overruled.

## Federal Preemption

In his fourth point of error, appellant contends the trial court erred in granting summary judgment on his claims because the federal Home Owners' Loan Act does not preempt state law tort remedies for savings and loan employees. Only FFSB and Fletcher asserted a federal preemption defense to appellant's wrongful termination claim. Because we have found that appellant's wrongful termination cause of action is barred by limitations, we overrule point of error four.

## Sanctions

In his final points of error, appellant argues that the trial court erred in imposing sanctions on appellant's attorney for violations of a stipulation and protective order for documents produced in a federal bank examination because FFSB did not have standing and the court did not have jurisdiction. The trial judge assessed a $2,500 sanction against the attorney because he filed as an attachment to his pleadings in the present case a copy of a confidential Report of Examination of First Federal Savings Bank, which had been produced by the OTS in another case handled by appellant's attorney, *John G. Scaramozi v. VBFSB Holding Corp., et al.*. The *Scaramozi* case had originally been filed in the same trial court as the instant case and was later removed to federal court. After appellant's attorney filed the confidential report as part of his response to the summary judgment motions, FFSB moved immediately for the withdrawal of the document and sanctions. The trial court held an expedited hearing, granted the motion, and imposed sanctions.

Appellant does not present argument or authorities regarding the standing issue, and therefore waives point five. TEX.R.APP.P. 74(f).

 In his sixth and final point of error, appellant argues that the trial court lacked jurisdiction to enter sanctions because the stipulation and protective order was issued in the *Scaramozi* case, which had been removed to federal court. Once a case has been removed from state to federal court, the state court is divested of all jurisdiction over the case. *Resolution Trust Corp. v. Murray,* 935 F.2d 89, 92 (5th Cir.1991); *Meyerland Co. v. Federal Deposit Ins. Corp.,* 848 S.W.2d 82, 83 (Tex.1993).

 Appellees contend that the stipulation and protective order was in fact a sealing order, and therefore, the trial court retained jurisdiction over the stipulation and protective order pursuant to TEX.R.CIV.P. 76a. It is true that a court "issu[ing] a sealing order retains continuing jurisdiction to enforce, alter, or vacate that order." TEX. R.CIV.P. 76a(7); *see Boyles v. Kerr,* 815 S.W.2d 545, 545 (Tex.1991). Any order "relating to sealing or unsealing court records shall be deemed to be severed from the case[.]" TEX.R.CIV.P. 76a(8). However, Rule 76a applies only to sealing orders and provides specific procedural guidelines to be observed by the trial court in issuing such a sealing order. Specifically, the rule provides that a sealing order may be issued only upon a party's written motion, after the posting of public notice, and the completion of a public hearing. TEX.R.CIV.P. 76a(3). The sealing of a record must meet the procedural requirements of Rule 76a. *Davenport v. Garcia,* 834 S.W.2d 4, 24 (Tex.1992); *see* TEX. R.CIV.P. 166b(5)(c) (noting that protective orders relating to discovery may be sealed only if done so pursuant to the procedures set out in Rule 76a). Although the stipulation and protective order at issue provides protection and disclosure requirements similar to what would be found in a sealing order, we can find no evidence of compliance with the Rule 76a procedures in this case. Accordingly, we can not conclude that the stipulation and protective order was a Rule 76a sealing order. Appellees argue in the alternative that regardless of which court had jurisdiction over the stipulation and protective order, the state court had the inherent power to order sanctions in order to punish appellant's abuse of the judicial process. We recognize that the trial court possesses inherent power to sanction to the extent necessary to "deter, alleviate, and counteract bad faith abuse of the judicial process." *Kutch v. Del Mar College,* 831 S.W.2d 506, 510 (Tex.App.—Corpus Christi 1992, no writ). However, we find no evidence that the trial court in this case

**84**

invoked such inherent power. The order awarding sanctions clearly indicates that the trial court's decision was based exclusively on the willful violation of the court's order in the *Scaramozi* case, not on its inherent power to order sanctions. As such, the issue before this court is not the trial court's inherent power, but whether the trial court had jurisdiction over the stipulation and protective order at issue.

 As previously noted, the federal court obtains exclusive jurisdiction over a case once it has been properly removed. *See Brentwood Financial Corp. v. Lamprecht,* 736 S.W.2d 836, 844 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.); 28 U.S.C. § 1446(d) (providing that once removal is effected "the state court shall proceed no further unless and until the case is remanded"). Further, when a case is removed to federal court, it is deemed that all litigation previously performed in state court had in fact been performed in federal court. *First RepublicBank v. Norglass, Inc.,* 958 F.2d 117, 119 (5th Cir.1992). Here, the *Scaramozi* case had been properly removed to federal court for some time before the trial court sought to enforce the stipulation and protective order previously entered in that case. We conclude that the trial court had no jurisdiction to award sanctions for the violation of an order issued in a separate case over which it had been divested of jurisdiction. Appellant's sixth point of error is well taken.

### Conclusion

We REVERSE the order of the trial court issued February 11, 1994, granting sanctions against appellant's attorney, J. Vince Hightower, and it is ORDERED that appellee First Federal Savings Bank's motion for sanctions is DENIED. The final judgment of the trial court issued April 6, 1994, does not include the sanctions and, therefore, is AFFIRMED.

DUNCAN, J., concurs in the judgment only.