No. 90,762

ROLAND WHYE, *Appellant,* v. THE CITY·COUNCIL FOR THE CITY OF TOPEKA, KANSAS, and JOAN WAGNON, as an Individual and as an Agent and Employee of the City of Topeka, Kansas, *Appellees.*

(102 P.3d 384)

Opinion filed December 3, 2004.

*Keith E. Renner,* of Barnett & Renner, of Auburn, argued the cause, and *Lee R. Barnett,* of the same firm, was with him on the briefs for appellant.

*Anne L. Baker,* of Wright, Henson, Clark & Baker, LLP, argued the cause, and *Wilburn Dillon, Jr.,* of Topeka, was with her on the brief for the appellees.

The opinion of the court was delivered by

BEIER, J.: Plaintiff Roland Whye filed this lawsuit against the City of Topeka (the City) and former Topeka Mayor Joan Wagnon, claiming wrongful termination. The district court granted the defendants' motion to dismiss on statute of limitations grounds. The Kansas Court of Appeals affirmed, although it differed from the district judge on the cause of action's precise accrual date. We granted review.

The relevant facts are undisputed. Whye was a major with the Topeka Police Department. He had served for nearly 30 years and was third in command under Chief Dean Forster. Whye and Forster were close friends as well as fellow officers.

In July 2000, Whye was arrested and charged with battery and criminal restraint. He was suspended without pay for 10 days. Ac-

cording to Whye, his arrest displeased then Mayor Wagnon. She demanded Forster terminate Whye or jeopardize his own position.

Whye decided to pursue early retirement, and on August 24, 2000, Forster sent a memorandum to the City's chief administrative officer regarding Whye's plan to retire. The memo read in pertinent part:

"I have met with Major Roland Whye and his attorney Doug Wells concerning Major Whye retiring from the Police Dept. Major Whye is willing to take his retirement after the third quarter of 2000, which would put his last day of employment as 9/15/2000.

"Major Whye is willing to remain on vacation until 9/15/2000 if he is reimbursed for his vacation for the first three quarters of 2000."

The police department agreed with Whye's plan to retire early and paid Whye for his vacation time on August 25, 2000. Whye's retirement became effective September 15, 2000.

Whye was acquitted of the criminal charges against him on June 20, 2001, and he filed this suit on August 30, 2002. Whye claimed denial of due process under 42 U.S.C. § 1983 (2000) and constructive discharge in violation of state public policy.

The district court ruled Whye's claims were time barred because the applicable 2-year statute of limitations began running August 24, 2000, i.e., the date the City responded to the news of Whye's retirement plan. See K.S.A. 2003 Supp. 60-513(a)(4).

On appeal Whye did not dispute that the 2-year statute set out in K.S.A. 2003 Supp. 60-513(a)(4) governed his federal and state claims. He argued, however, that neither claim accrued until the effective date of his retirement, September 15, 2000. Before that point, the defendants could have reversed their position and he could have continued working. Thus his lawsuit was timely filed.

The Court of Appeals panel, exercising the unlimited appellate review appropriate when a motion to dismiss or motion for summary judgment has been granted in the district court, rejected Whye's reasoning and relied on *Johnston v. Farmers Alliance Mutual Ins. Co.*, 218 Kan. 543, 545 P.2d 312 (1976), stating: "[A] cause of action for wrongful discharge accrues when the plaintiff knows or is certain about the termination." In the panel's view, Whye became certain of his termination when the department responded

to Forster's memorandum on August 25, 2000, and the August 30, 2002, lawsuit was therefore time barred. It affirmed the district court despite the 1-day difference in its analysis of the facts. *Whye v. City Council for the City of Topeka*, No. 90,762, unpublished opinion filed March 5, 2004.

We have not previously ruled on how to determine the date that triggers the statute of limitations for a constructive discharge claim or a § 1983 claim based upon it. We also have not addressed this issue in a situation where the plaintiff elected to take early retirement. At least three possible accrual dates are worthy of consideration: (1) the date the employee notifies the employer of his or her intention to retire; (2) the date the employer accepts the employee's offer to retire; and (3) the effective date of the retirement. Resolution of this question requires interpretation of the statute of limitations, and interpretation of a statute raises a question of law. We therefore have unlimited review. See *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1027, 58 P.3d 1284 (2002).

Defendants argue and we agree that accrual of Whye's §1983 claim and accrual of his state law constructive discharge claim must be analyzed separately.

Whye's § 1983 claim accrued when he knew or should have known that his constitutional rights had been violated. See *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 557 (10th Cir. 1999) (citing *Smith v. City of Enid*, 149 F.3d 1151, 1154 [10th Cir. 1988]).

Whye alleged in his petition that Wagnon summoned Forster into her office and demanded that he fire Whye. When Forster reported this demand to Whye, Whye saw "that putting up a fight against Mayor Wagnon's decision would cause the resignation or termination of a dear and respected friend," and thus he "had no choice but to end his [own] employment and accept early retirement." On these facts, we agree with the district judge that any alleged deprivation of due process had been committed and was known to Whye no later than August 24, 2000, when Whye communicated through Forster that he intended to take what he viewed as a forced retirement.

With regard to accrual of Whye's constructive discharge claim under state law, K.S.A. 2003 Supp. 60-513(b) controls. It states:

"[T]he causes of action listed . . . shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party."

This court has defined constructive discharge to mean " '[q]uitting as a reasonable response to illegal treatment.' " *Garvey Elevators, Inc. v. Kansas Human Rights Comm'n*, 265 Kan. 484, 494, 961 P.2d 696 (1998) (quoting Player, Employment Discrimination Law § 5.60 [1988]). Whye asserts that he suffered no injury or damages until his retirement became effective and criticizes the 30-year-old *Johnston* case relied on by the Court of Appeals as outdated and factually distinct.

*In Johnston*, plaintiff Stanton Johnston was a longtime employee of Farmers Alliance Mutual Insurance (Alliance). Johnston claimed he was terminated on March 3, 1972, in retaliation for reporting missing money to his superiors. Although Alliance paid him through May 31, 1972, he had found other employment on May 25, 1972. Johnston filed his lawsuit on May 31, 1974, and Alliance moved for summary judgment, claiming his claim for retaliatory discharge was barred by the 2-year statute of limitations. *Johnston*, 218 Kan. at 543-44.

This court determined that, in the words of 60-513(b), the act giving rise to Johnston's claim first caused substantial injury when he received notice of his termination on March 3, 1972. This was true, "[a]lthough some damages to the plaintiff may not have accrued under the accounting principles until installments of salary had ceased." *Johnston*, 218 Kan. at 548.

Whye's criticism of *Johnston* is unpersuasive. The notice of termination that marked accrual of Johnston's cause of action for retaliatory discharge is legally indistinguishable from Whye's communication of his plan to pursue retirement here. Although each act predated the ultimate cessation of pay, it signaled that the cessation had become inevitable. If we accept Whye's version of the facts as true, as we must on this review, he felt he had no choice

and was forced to take early retirement; in other words, he had already been shown the door just as convincingly as Johnston had. The statute of limitations began to run on August 24, 2000, and Whye's lawsuit was time barred.

Our review of other jurisdictions' constructive discharge cases lends support to our decision.

The New York Supreme Court held in *Clark v. State*, 302 App. Div. 2d 942, 754 N.Y.S.2d 814 (2003), that Nancy Clark's claim for constructive discharge was filed too late: 3 years and 1 day after submitting her letter of resignation. The letter was submitted October 4, 1985, to be effective October 7, 1985. The court held Clark's claim accrued when she tendered her letter of resignation on October 4, 1985, "not when her resignation became effective." *Clark*, 302 App. Div. 2d at 944.

In *Daniels v. Mutual Life Ins. Co.*, 340 N.J. Super. 11, 773 A.2d 718 (2001), the New Jersey court opted for a bright-line accrual test, holding that the period of limitations for constructive discharge cases "begins to run on the date that the resignation is tendered." 340 N.J. Super. at 13. The plaintiff, who had tendered her resignation on December 4, 1995, was persuaded to stay through the end of the week, making her last day of employment December 8. She filed suit 1 year from her last day, *i.e.*, 1 year and 4 days after resigning. The court said:

"The harm has been done when the employee feels compelled to resign. In short, in an actual termination situation, the retaliatory action which starts the running of the period of limitations is the separation from work. In a constructive discharge situation, the retaliatory action is the creation of intolerable conditions which a reasonable employee cannot accept. The conditions become intolerable when the employee tenders his or her resignation. Thus, by definition, the act of discrimination cannot occur any later than the date of resignation." 340 N.J. Super. at 17-18.

In *University of Texas Medical Branch v. Hohman*, 6 S.W.3d 767, 773-74 (Tex. App. 1999), the Texas Court of Appeals rejected the employer's argument that nurses claiming constructive discharge had to file suit within 90 days of when retaliatory conduct began, rather than within 90 days of their eventual resignation. *Hohman*, 6 S.W.3d at 773-74. Moreover, the court stated,

"[r]egardless of when the nurses actually left the employment of [the University], we hold that their constructive discharge claims accrued on the dates they submitted their resignations. By those dates, they were aware that conditions had become intolerable and that they felt compelled to resign." *Hohman*, 6 S.W.3d at 774.

In *Hancock v. Bureau of National Affairs, Inc.*, 645 A.2d 588 (D.C. 1994), the District of Columbia Court of Appeals reviewed a fact situation very similar to the one presented here.

Plaintiff James Hancock had submitted his letter of resignation on June 20, 1991, which was also his last day of work. The letter stated Hancock was retiring early because of the defendant employer's discriminatory conduct toward him, and he would take 7 weeks of accrued vacation, starting the next day. Hancock and the employer then continued discussions on the amount of salary and commission owed to Hancock, and the employer eventually sent a letter to Hancock on August 16, 1991, stating that July 31, 1991, was his official retirement date. Hancock brought suit on July 20, 1992. *Hancock*, 645 A.2d at 589.

The employer argued Hancock's case was time barred by the applicable one-year statute of limitations; Hancock argued that the statute had not begun to run until his official retirement date. Like Whye, Hancock said that, until he was officially retired, he and the employer could have worked out their differences and he could have abandoned his plan to retire. *Hancock*, 645 A.2d at 590.

The court sided with the employer, relying on cases from Illinois, Washington, and the federal District of Kansas. *Hancock*, 645 A.2d at 590 (citing *Lowell v. Glidden-Durkee, Div. of SCM Corp.*, 529 F. Supp. 17, 19 [N.D. Ill. 1981]; *Lange v. Cigna Individual Financial Serv. Co.*, 766 F. Supp. 1001, 1004 [D. Kan. 1991]; *Douchette v. Bethel School Dist. No. 403*, 117 Wash. 2d 805, 815, 818 P.2d 1362 [1991]). It observed that some courts "focused their inquiry upon identifying the 'last possible date on which an unlawful employment practice could have occurred,' " while others rejected the argument that the effective date of resignation or retirement should serve as the statute of limitations trigger; those jurisdictions instead found that the accrual date was the date of the allegedly forced announcement of resignation. 645 A.2d at 590 (quoting

*Lowell,* 529 F. Supp. at 19). Specifically with regard to Hancock, "No discriminatory act supporting a claim of constructive discharge could occur after the last day that an employee was physically at work." *Hancock,* 645 A.2d at 590 n.1.

In line with these authorities and the language of K.S.A. 2003 Supp. 60-513(b), and consistent with the nature of a claim for constructive discharge, *i.e.,* that the plaintiff has been *forced* to leave an intolerable workplace, we hold that the cause of action accrues and the statute of limitations begins to run when the plaintiff tenders his or her resignation or announces a plan to retire. For Whye, this was August 24, 2000. See *Flaherty v. Metromail Corporation,* 235 F.3d 133, 136-39 (3d Cir. 2000); *Hancock,* 645 A.2d at 590 n.1; *Johnston,* 218 Kan. at 548. We agree with the *Daniels* court's practical bright-line approach. See *Daniels,* 340 N.J. Super. at 13, 19.

Finally, at oral argument Whye asserted that the tolling provision of K.S.A. 12-105b(d) somehow excused the late filing of his lawsuit. This issue was not pursued in the district court at the hearing on defendants' motion to dismiss. Nor did it appear in Whye's brief to the Court of Appeals or his petition for review to this court. We therefore deem this issue was not preserved and is abandoned. See *Board of Lincoln County Comm'rs v. Nielander,* 275 Kan. 257, 268, 62 P.3d 247 (2003).

The district court is affirmed. The Court of Appeals is affirmed as right for the wrong reason. See *Drake v. Kansas Dept. of Revenue,* 272 Kan. 231, 239, 32 P.3d 705 (2001) (decision will be upheld even though wrong ground relied upon if result was correct).